UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAMMIE E. MANLEY, | ) | CASE NO.  4:13CV2177 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| | ) | |
| CORRECTION OFFICER LOWER, | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Rammie E. Manley ("Plaintiff" or "Manley") alleges that Defendant Brooke Lower, a corrections officer, violated his civil rights by spraying him with a chemical spray while he was incarcerated at Mansfield Correctional Institution ("MCI"), causing Manley to fall and injure his back.  Doc. 1, pp. 3-4.[1]  Lower has filed a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6).  Lower argues that Manley failed to exhaust administrative remedies, a pre-condition to suit established by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Doc. 30.  Manley has submitted an opposition (Doc. 31) and Lower has filed a brief in reply (Doc. 33).

This case is before the undersigned Magistrate Judge pursuant to the consent of the parties.  Doc. 24.  For the reasons explained below, the Court **GRANTS** Defendant's motion.

### I. Background[2]

#### A.  Factual Background

---

[1] Manley filed his initial Complaint *pro se* on October 3, 2013.  Doc. 1.  On June 20, 2014, the Court appointed counsel to represent Manley.  Doc. 6.  Manley thereafter filed an Amended Complaint.  Doc. 28.

[2] The background facts are taken from the Amended Complaint.  On a motion to dismiss, the Court presumes all well-pleaded allegations of the complaint to be true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

1

The facts alleged in the Amended Complaint occurred in February 2013 while Manley was incarcerated at MCI. Manley's cell mate intentionally flooded their shared cell by stopping up the toilet and repeatedly flushing it. Doc. 28, p. 2, ¶10. A corrections officer responded by spraying mace or a similar chemical agent into the cell. Doc. 28, p. 2, ¶11. The officer handcuffed Manley and his cellmate and moved them to another cell. Doc. 28, p. 2, ¶11. Manley repeatedly requested a change of clothing because the chemical agent that remained on his clothing was causing him severe skin irritation and difficulty breathing. Doc. 28, p. 2, ¶12. Manley did not receive a change of clothing. Doc. 28, p. 2, ¶13.

On or about February 25, 2013, approximately four days after being moved to the new cell, Manley still had not received a change of clothing. Doc. 28, p. 2, ¶14. In order to gain the attention of a corrections officer and obtain a change of clothing, Manley and his cellmate flooded the cell again in the same manner as before. Doc. 28, pp. 2-3, ¶¶14-15. The water to their cell was shut off. Doc. 28, p. 3, ¶16. Defendant Lower approached Manley's cell carrying what Manley believed was a clean change of clothing. Doc. 28, p. 3, ¶17. Manley expected Lower to hand him the clothing through the opening in his cell door. Doc. 28, p. 3, ¶18. Manley, therefore, stood directly in front of the opening. Doc. 28, p. 3, ¶18. Lower placed the clothing under the cell door to prevent any additional water from escaping and sprayed mace or a similar chemical agent into the cell and directly onto Manley. Doc. 28, p. 3, ¶19. When he was sprayed, Manley fell, hitting the metal toilet in the cell and injuring his back. Doc. 28, p. 3, ¶20. Manley screamed for help. Doc. 28, p. 3, ¶21. Lower waited several minutes and then sprayed the chemical agent into the cell again. Doc. 28, p. 3, ¶22. Several more minutes passed before Manley was moved to an uncontaminated cell. Doc. 28, p. 3, ¶24. The amount of chemical spray in the unit was such that MCI staff opened the doors to allow the spray to dissipate. Doc.

28, p. 3, ¶25.

Approximately three months later, for unrelated reasons, Manley was transferred to the Ohio State Penitentiary in Youngstown, Ohio.  Doc. 28, p. 4, ¶27.  He continues to experience back pain.  Doc. 28, p. 4, ¶28.

### B.  Procedural Background

Fourteen days after being sprayed with a chemical agent and injuring his back, Manley filed an Informal Complaint.[3]  Doc. 28, p. 4, ¶31.  Manley described the incident and indicated that "c/o Anderson" was a witness.  Doc. 28-1, p. 2.  On March 12, 2013, Captain Killian of MCI responded to Manley's Informal Complaint.  Doc. 28, p. 4, ¶32.  Captain Killian wrote, "Reports will be reviewed and c/o Anderson denies witnessing the Use of Force or allegations stated in ICR."  Doc. 28-1, p. 2.

On May 6, 2013, Manley filed a second Informal Complaint.  Doc. 28, p. 4, ¶35.  He wrote, "This ICR is being filed for the second time.  Because it wasn't answered the first time."  Docs. 28-2, p. 2; 28, p. 4, ¶35.  On May 10, 2013, the Office of the Chief Inspector for the Ohio Department of Rehabilitations and Correction directed correspondence to Manley stating that his informal complaint was being returned due to Manley's failure to comply with Ohio Administrative Code ("OAC") 5120-9-31."[4]  Doc. 28, p. 5, ¶40.  On June 13, 2013, Captain Killian responded: "No longer at M[]CI."  Docs. 28 p. 5, ¶37; 28-2, p. 2.  Because he had been transferred, Manley did not receive a copy of Killian's response or the letter from the Office of

---

[3]  Manley attached copies of his informal complaints to his Amended Complaint.  *See* Docs. 28-1; 28-2.  The first Informal Complaint is dated February 25, 2013, the same day of the incident; Manley's complaint states that the Informal Complaint was filed "within fourteen [ ] days."  Doc. 28, p. 4, ¶31.

[4]  This correspondence has not been provided to the Court.  The Amended Complaint states that the Chief Inspector's letter was "directed to Mr. Manley" on May 23, 2013, ten days *after* Captain Killian responded to Manley's second Informal Complaint, on June 13, 2013.  Doc. 28, p. 5, ¶¶37, 40.  The apparent discrepancy regarding the dates of the Chief Inspector's letter and Captain Killian's resonse is not material to the disposition of this case.

the Chief Inspector. Doc. 28, p. 5, ¶¶39-40.

## II. Law

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The factual allegations of a pleading must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. A court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Id.* "Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks omitted). In addition to reviewing the claims set forth in the complaint, a court may also consider exhibits, public records, and items appearing in the record of the case as long as the items are referenced in the complaint and are central to the claims contained therein. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## III. Analysis

Lower contends that Manley's complaint should be dismissed because Manley failed to exhaust his administrative remedies. Doc. 30. The parties agree that the PLRA requires an inmate to exhaust all administrative remedies before filing an action in federal court. Docs. 30, p. 3; 31, p. 5; *see* 42 U.S.C. § 1997e(a) ("No action shall be brought...under section 1983...until

4

administrative remedies as are available are exhausted"); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (pursuant to the PLRA, the exhaustion requirement is mandatory and extends to all available remedies); *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011). Exhaustion is required even when "the prisoner subjectively believes the remedy is not available...and even where [the prisoners] believe the procedure to be ineffectual or futile." *Id*. (internal citations and quotation marks omitted). Exhaustion must be "proper"—that is, it must use all steps that the prison requires and comply with "deadlines and other critical procedural rules." *Ngo*, 548 U.S. at 90; *Jones v. Bock*, 549 U.S. 199, 218 (2007) (inmates must exhaust the requirements set forth by the prison, which will vary from system to system); *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). A failure of an inmate to exhaust administrative remedies before bringing a civil rights action in federal court results in dismissal of the complaint. *Smith v. Fed. Bureau of Prisons*, 300 F.3d 721, 723 (6th Cir. 2002) (citing *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997)).

Manley acknowledges that Ohio has codified its administrative remedies for inmate grievances in OAC 5120-9-31. Doc. 31, p. 5. The inmate grievance procedure is comprised of three consecutive steps: (1) the filing of an informal complaint; (2) the filing of the notification of grievance; and (3) the filing of an appeal of the disposition of grievance. OAC 5120-9-31(K)(1)-(3). The same regulation provides the time frame and the requirements for the informal complaint and the response to it:

> Within fourteen calendar days of the date of the event giving rise to the complaint, the inmate shall file an informal complaint to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint. Staff shall respond in writing within seven calendar days of receipt of the informal complaint. If the inmate has not received a written response from the staff member within a reasonable time, the inmate should immediately contact the inspector of institutional services either in writing or during regular open office hours. The inspector of institutional services shall take prompt action to ensure that a written response is

5

> provided to the informal complaint within four calendar days. If a response is not provided by the end of the fourth day, the informal complaint step is automatically waived. Informal complaint responses should reflect an understanding of the inmate's complaint, be responsive to the issue, cite any relevant departmental or institutional rules or policies and specify the action taken, if any.

*Id*.

### A.

Of the three steps required for a prisoner to exhaust administrative remedies under Ohio law, Manley completed only the first step when he filed his first Informal Complaint within fourteen days of the incident. Doc. 28, p. 4, ¶31. He received a response from Captain Killian on March 12, 2013. Doc. 28, p. 4, ¶32. Thereafter, Manley failed to proceed to step two of the administrative process, the filing of a notification of grievance. Instead, months later, he began the grievance process anew by filing an untimely second Informal Complaint, which was rejected for noncompliance with OAC 5120-9-31. Doc. 28, p. 4, ¶35; p. 5, ¶40. Thus, Manley did not complete the inmate grievance procedure as provided by OAC 5120-9-31(K).

Manley argues that Captain Killian's response to his first Informal Complaint was faulty because it did not meet the standard set forth in OAC 5120-9-31(K)(1), which provides that responses "should reflect an understanding of the inmate's complaint, be responsive to the issue, cite any relevant departmental or institutional rules or policies and specify the action taken, if any."[5] Doc. 31, p. 6. He asserts that Captain Killian's response only stated, "reports will be reviewed" and that this is insufficient. Doc. 31, p. 6. Manley's assertion is inaccurate. Killian's explanation also stated that Corrections Officer Anderson did not witness Manley's allegations. At a minimum, Captain Killian's response was sent within a reasonable time, reflected an understanding of Manley's complaint and was responsive to the issue. Manley does not explain

---

[5] As discussed, *infra*, Manley admits that he was "not displeased" with Captain Killian's response.

what other information should have been included in the response or how, exactly, the response failed to comply with OAC 5120-9-31(K)(1).

To the extent that Manley was dissatisfied with Captain Killian's response, his remedy was to move on to step two of the grievance procedure, the submission of a notification of grievance.  *See* OAC 5120-9-31(K)(2) ("If the inmate is dissatisfied with the informal complaint response, [] the inmate may obtain a notification of grievance form from the inspector of institutional services.  All inmate grievances must be filed by the inmate no later than fourteen calendar days from the date of the informal complaint response.").  Manley did not move on to step two.  Instead, he filed a second informal complaint.  Manley's second Informal Complaint, untimely filed months after the incident, was deemed noncompliant with OAC 5120-9-31 by the Chief Inspector.  The fact that Manley did not receive a response to his second Informal Complaint does not impact the fact that Manley failed to follow proper inmate grievance procedure with respect to his timely first Informal Complaint.  Again, Manley was required to proceed to step two within fourteen days of receiving Captain Killian's response to his first Informal Complaint.

**B.**

Manley next claims that he was "not displeased" with Captain Killian's response.  Doc. 31, p. 6.  He maintains that an investigation was exactly what he wanted but that prison officials did not follow up with him regarding their investigation of his complaint.  Doc. 31, p. 6.  Manley submits that, because prison officials gave no *additional* response, "their response had the same effect as if the prison officials had not responded at all."  Doc. 31, p. 6.  Assuming, without deciding, that Manley was reasonable in believing that an additional response would be forthcoming, his remedy is specifically provided for in the inmate grievance procedure.  If an

7

inmate "has not received a written response from the staff member within a reasonable time, the inmate should immediately contact the inspector of institutional services either in writing or during regular open office hours." OAC 5120-9-31(K)(1). This Manley did not do. Instead, he submitted a second Informal Complaint to Captain Killian. Because Manley failed to comply with the inmate grievance procedure set forth in OAC 5120-9-31(K)(1), he has not exhausted his administrative remedies. See 42 U.S.C. § 1997e(a); *Napier*, 636 F.3d at 222, n. 2 (an inmate's failure to exhaust administrative remedies is not excused by his ignorance of the law or the grievance policy).[6]

### C.

Manley cites *Boyd v. Corrections Corp. of Am.*, 380 F.3d 989 (6th Cir. 2004), in support of his position that an inmate exhausts his administrative remedies when a prison official fails to respond to a properly filed grievance. Doc. 31, p. 7. In *Boyd*, the Sixth Circuit held that "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance." Id. at 996. In *Boyd*, the prison official "totally failed to respond to the grievance." Id. Here, in contrast, Captain Killian responded to Manley's first Informal Complaint, Doc. 28-1, p. 2, and Manley's second Informal Complaint was not properly filed. Moreover, the grievance procedure in *Boyd* precluded an inmate from proceeding with the administrative process until he received a response. 380 F.3d at 996. OAC 5120-9-31(K) contains no such provision. See OAC 5120-9-31(K)(1) (providing that, if a response to an informal complaint is not forthcoming, step one is waived and the inmate may proceed to step two); see also *Boyd*, 380 F.3d at 996 (finding *Jorss v. Vanknocker*, 2001 WL 823771, at *2 (N.D.Cal. July 19, 2001), distinguishable because the inmate in *Jorss* was not foreclosed from

---

[6] Moreover, OAC 5120-9-31(K)(1) provides that, if the inspector fails to respond within four days, step one is waived and the inmate proceeds to step two. Manley did not proceed to step two.

proceeding with his grievance after having received no response to his initial appeal); *see also* *Ward v. Luckey*, 2013 WL 5595350, at *7 (E.D.Mich. Oct. 11, 2013) (finding *Boyd* inapplicable to situations in which the process permits an inmate to proceed with his grievance despite the prison's failure to respond to a step two grievance); *Malick v. Campbell*, 2008 WL 314383, at *3 (W.D.Ky. Feb. 4, 2008) (*Boyd* does not apply when there is a specific provision enabling an inmate to proceed with the grievance process despite a corrections officer's inaction). Accordingly, the rule established in *Boyd* does not excuse Manley's failure to exhaust his administrative remedies.

### D.

Although Manley asserts that he never received a response to his second Informal Complaint because he was transferred to another prison, he does not state that the grievance procedure at MCI is or was unavailable to him. Regardless of whether Manley received a response, by the time he was transferred he had failed to comply and still has not complied with the inmate grievance procedure set forth in OAC 5120-9-31.

Because Manley did not exhaust the administrative remedies that were available to him, *Ngo*, 548 U.S. at 85, his complaint must be dismissed, *Smith*, 300 F.3d at 723. Lower requests that the Court dismiss Manley's claim with prejudice. Doc. 33, p. 5. Manley does not respond to Lower's request that the complaint be dismissed with prejudice. Although the Court finds that Manley did not exhaust his administrative remedies before filing this action, the Court is unable to determine at this time whether dismissing Manley's complaint with prejudice is warranted.[7] Accordingly, Manley's complaint is dismissed without prejudice.

---

[7] *See, e.g.*, OAC 5120-9-31(K)(2) ("The inspector of institutional services may [ ] waive the timeframe for the filing of [step two,] the notification of grievance, for good cause.").

## IV. Conclusion

For the reasons discussed above, Defendant's Motion to Dismiss (Doc. 30) is **GRANTED**.  Manley's Amended Complaint is dismissed without prejudice.

IT IS SO ORDERED.

Dated:  January 29, 2015

_____
Kathleen B. Burke
United States Magistrate Judge

10